CITY OF CHICAGO v. INSULL et al.

(Circuit Court of Appeals, Seventh Circuit. February 2, 1917.)

No. 2394.

1. MUNICIPAL CORPORATIONS ⬤116—ORDINANCES—IMPLIED REPEAL—CONTRACT ORDINANCE.

Implied repeals of ordinances creating contracts are to be found only where there is such utter repugnancy between the earlier ordinance and the later ordinance that the two cannot be reconciled and stand together.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 268–271.]

2. MUNICIPAL CORPORATIONS ⬤116—ORDINANCES—ELEVATED RAILROAD FRANCHISE—IMPLIED REPEAL.

A contract ordinance granting an elevated railroad company the right to operate along a certain street is not impliedly repealed by a subsequent contract ordinance requiring trains to be operated along other streets, where such trains, after having been operated as required by the later ordinance, could still be operated over the streets covered by the earlier ordinance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 268–271.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by Samuel Insull, as receiver of the Chicago & Oak Park Elevated Railroad Company, and others, against the City of Chicago. Decree for complainants, and defendant appeals. Affirmed.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A. L. Gettys, of Chicago, Ill., for appellant.

Gilbert E. Porter, Isaac H. Mayer, and Harry B. Hurd, all of Chicago, Ill., for appellees.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

BAKER, Circuit Judge. By contract ordinance made some years prior to 1893 Chicago & Oak Park Elevated Railroad Company had the right to enter Chicago from the west and to proceed along Lake street eastwardly as far as Canal street, which is a street running north and south near the west bank of the Chicago river. By contract ordinance of 1893 the elevated railroad company was granted the right to continue its elevated structure eastwardly along Lake street, across the Lake Street bridge, thence eastwardly to the east line of Market street (which runs north and south), and thence south in Market street to Madison street. In 1914 the city passed an ordinance by virtue of which it undertook to revoke the right of the railroad company to maintain the elevated structure in Market street and to compel removal thereof.

No claim is made that the railroad company ever expressly surrendered the rights obtained by it in 1893, or ever expressly consented to the abrogation of the contract ordinance of that year. The sole basis for the city's insistence upon an abrogation by implication arises from the railroad company's acceptance of a contract ordinance in 1894; and the only provision therein which is said to compel the implication of a surrender of the rights granted in 1893 is the following:

"All trains operated by said company over its line of road, passing over the Lake Street bridge eastwardly, shall at least alternately continue eastwardly over the line of road hereby authorized, and in case said company shall hereafter obtain the right to build or use a loop line for running its trains, then all its trains proceeding eastwardly over Lake Street bridge shall continue to proceed eastwardly over the elevated railroad hereby authorized, and no trains of said company shall move westwardly over the elevated railroad hereby authorized between Wabash avenue and Market street, except such trains as have first proceeded eastwardly over the elevated railroad hereby authorized."

"The elevated railroad hereby authorized" extended from the east line of Market street along Lake street to Wabash avenue. The railroad company did subsequently obtain the right to use a loop line, and its own line between Fifth avenue and Wabash avenue constituted the north side of the loop.

[1, 2] Repeals of ordinances by implication and the abrogation of valid subsisting contracts by implication are to be found only when there is such utter repugnancy between the earlier ordinance or contract and the later ordinance or contract that the two cannot be reconciled and stand together. If it had been the intention of the contracting parties in 1894 to cancel the 1893 right to maintain an elevated structure in Market street as soon as the loop should be available, it would have been a very easy and a very simple matter to have expressed that intention in words. The intention is not to be implied if the elevated structure in Market street could continue to be used in connection with a use of the 1894 extension in strict compliance with the requirements of the 1894 contract ordinance. It seems to us perfectly apparent that if all trains had proceeded eastwardly over

the Lake street bridge, and thence eastwardly along Lake street to Wabash avenue, and thence around the loop to Lake street, and thence westwardly on Lake street to the east line of Market street, thereby using the 1894 grant in strict accordance with the manner specified in the provision hereinabove quoted, then all such trains, being back upon territory covered in the 1893 grant, could go upon the Market street structure and serve the public in that locality, without in any way violating either the spirit or the strictest literal interpretation of the provision in the 1894 grant. The master and the chancellor in the trial court not only found that such use was possible, but had been long practiced by the railroad company.

As this construction, which is based upon the plain reading of the documents, disposes of the case, it is unnecessary to detail the evidence in support of the findings of the master, approved by the chancellor, which shows that the practical construction placed upon the contract by the parties themselves during many years confirm and accord with the plain reading.

The decree is affirmed.